[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 311.]

IN RE ESTATE OF ROBERTS.

[Cite as *In re Estate of Roberts*, 2002-Ohio-791.]

*Taxation—Estate tax—Value of gross estate includes value of a rollover IRA decedent purchased and to which decedent's employer did not directly contribute by reason of decedent's employment—R.C. 5731.09(A), construed and applied.*

(No. 00-2138—Submitted October 17, 2001—Decided February 27, 2002.)

APPEAL from the Court of Appeals for Miami County, No. 2000CA15.

_____

SYLLABUS OF THE COURT

Under R.C. 5731.09(A), the value of the gross estate includes the value of a rollover IRA that the decedent purchased and to which the decedent's employer or former employer did not directly contribute by reason of the decedent's employment. (R.C. 5731.09[A], construed and applied.)

_____

COOK, J.

{¶ 1} R.C. 5731.09(A) exempts from estate tax the value of an annuity (or similar payment to a surviving beneficiary) attributable to contributions by a decedent's former employer to an employee's trust or fund. This case asks whether the exemption applies even when the decedent has transferred funds from an employee retirement account to an individual retirement account ("IRA") to which the employer has not directly contributed. For the reasons that follow, we find that it does not.

I

**{¶ 2}** In February 1993, Robert Lawrence Roberts retired from his employment with Pioneer Rural Electric Cooperative, Inc. ("Pioneer").[1] During Roberts's employment, both Roberts and Pioneer had contributed to an employee retirement fund administered by the National Rural Electric Cooperative Association. When Roberts retired, his Pioneer retirement account contained $346,440.22, a sum composed of Roberts's contributions ($9,463.50), interest on Roberts's contributions ($12,813.45), ordinary income ($201,288.08), and capital gains ($122,875.19). Immediately upon his retirement, Roberts received a check for $9,463.50, the amount of his own after-tax contributions to his employee retirement account.

**{¶ 3}** Shortly after he retired from Pioneer, Roberts requested that the remainder of his employee retirement fund—$336,976.72—be transferred to an IRA he had previously opened with Edward D. Jones & Company. Of the amount rolled over to the IRA, $12,813.45 represented the interest earned on Roberts's contributions to his Pioneer employee retirement fund. By the time that Roberts died in November 1997, the value of his IRA had grown to $597,347.

**{¶ 4}** In June 1998, Roxie L. Roberts, as administrator of the estate of Robert Lawrence Roberts, filed an Ohio estate tax return that reported no tax due. The estate listed among Roberts's assets the value of the rollover IRA with Edward D. Jones & Company; the estate claimed, however, that the entire value of the IRA was excluded from the value of the gross estate by virtue of R.C. 5731.09(A). The Tax Commissioner filed exceptions to the estate's tax return in probate court, contending that the estate's interpretation of R.C. 5731.09(A) was incorrect. The commissioner also adjusted the estate's tax return and, after including the value of Roberts's IRA in calculating the value of the gross estate, found an estate tax

---

1. The parties' joint stipulations in the probate court refer to Roberts's "quasi-retirement" from Pioneer without elaborating on the distinction between retirement and quasi-retirement. As no party contends that any distinction between the two terms is relevant to this appeal, we refer simply to Roberts's retirement from Pioneer.

deficiency of $28,378.49. The estate filed its own exceptions in the probate court challenging the commissioner's assessment of estate tax.

{¶ 5} The estate and the commissioner submitted the matter to the probate court on briefs and joint stipulations. The estate conceded that $22,713.94—the amount representing earnings and appreciation traceable to Roberts's contributions to his Pioneer employee retirement account before the rollover to his IRA—was "fully taxable under any reading of R.C. 5731.09." Thus, the only issue before the probate court was whether the remaining value of the IRA—$574,633.06—was a taxable portion of the gross estate under R.C. 5731.09. The parties stipulated that this amount of the IRA was traceable to "employer contributions originally made to the Pioneer Rural Electric Cooperative, Inc. retirement plan plus earnings and appreciation thereon."

{¶ 6} The probate court ruled in favor of the estate and held that the disputed value of the IRA should not be included when calculating the value of the gross estate. The commissioner appealed the probate court's decision to the Second District Court of Appeals, which reversed. The court of appeals found R.C. 5731.09(A)'s language ambiguous, noting that it was "unable to determine whether the legislature intended to exclude from one's gross estate funds attributable to employer contributions only insofar as those funds remain in employee retirement funds maintained by the employer, or if it intended to exclude all funds traceable to employer contributions without regard to their location at the time of death." But because the language of R.C. 5731.09(A) did not "clearly support" the estate's claim for an exemption from estate tax, the court of appeals construed the statute most strongly against the exemption and in favor of taxation. The court of appeals therefore found that the disputed value of the IRA should be included in calculating the value of Roberts's gross estate.

{¶ 7} The cause is now before this court pursuant to the allowance of a discretionary appeal.

II

**{¶ 8}** The estate offers three propositions of law, all of which surround the proper interpretation of R.C. 5731.09(A). This statute provides:

"Except as provided in division (B) of this section, the value of the gross estate includes the value of an annuity or other payment receivable by a beneficiary by reason of surviving the decedent under any form of contract or agreement under which an annuity or similar payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another, for the decedent's life or for any period not ascertainable without reference to the decedent's death, or for any period which does not in fact end before the decedent's death.

"However, the value of the gross estate includes only such part of the value of the annuity or other payment receivable under the contract or agreement as is proportionate to that part of the purchase price of the contract or agreement contributed by the decedent. *The value of the gross estate does not include the part of the value of the annuity or other payment as is proportionate to the part of the purchase price of the contract or agreement contributed by the employer or former employer of the decedent, whether to an employee's trust or fund forming part of a pension, annuity, retirement, bonus, or profit-sharing plan or otherwise, if the contributions were made by reason of the decedent's employment.*" (Emphasis added.)

**{¶ 9}** The parties disagree on the proper interpretation of the second paragraph of R.C. 5731.09(A). The estate argues that the value of Pioneer's contributions to Roberts's employee retirement account remained exempt from estate tax even after Roberts transferred them to his rollover IRA. In contrast, the commissioner argues that the full purchase price of the IRA was attributable to Roberts, leaving nothing to qualify for the exclusion described in R.C. 5731.09(A).

**{¶ 10}** In support of its argument, the estate first asserts that R.C. 5731.09(A) is a statute that imposes a tax and therefore requires strict construction against the state, with any doubt resolved in favor of the taxpayer. See *Davis v. Willoughby* (1962), 173 Ohio St. 338, 19 O.O.2d 270, 182 N.E.2d 552, paragraph one of the syllabus; *Clark Restaurant Co. v. Evatt* (1945), 146 Ohio St. 86, 31 O.O. 576, 64 N.E.2d 113, paragraph three of the syllabus. The estate observes that the statute uses the words "include" and "includes" rather than the words "except" and "exception," which prominently appear in other statutes defining tax exemptions. Because of this, the estate contends that R.C. 5731.09(A) actually defines what is part of the gross estate and subject to tax.

**{¶ 11}** When ascertaining the meaning of statutory language, we must give meaning to all portions of the statute. See *Sims Bros., Inc. v. Tracy* (1998), 83 Ohio St.3d 162, 166, 699 N.E.2d 50, 54. In this case, we must look to both paragraphs of R.C. 5731.09(A) in order to determine whether the statutory language at issue imposes a tax or defines an exemption. If the provision does the latter, we must strictly apply the statute against the exemption. *Lakefront Lines, Inc. v. Tracy* (1996), 75 Ohio St.3d 627, 629, 665 N.E.2d 662, 664. " '[T]axation is the rule, and exemption is the exception. Since the reduction depends on legislative grace, the statute must clearly express the exemption, *Cleveland v. Bd. of Tax Appeals* (1950), 153 Ohio St. 97, 99-100, 41 O.O. 176, 178, 91 N.E.2d 480, 482, paragraph one of the syllabus, and a taxpayer must show his entitlement to it, *Natl. Tube Co. v. Glander* (1952), 157 Ohio St. 407, 47 O.O. 313, 105 N.E.2d 648, paragraph two of the syllabus.' " *Id.*, quoting *Ares, Inc. v. Limbach* (1990), 51 Ohio St.3d 102, 104, 554 N.E.2d 1310, 1312; see, also, *Vought Industries, Inc. v. Tracy* (1995), 72 Ohio St.3d 261, 264, 648 N.E.2d 1364, 1366.

**{¶ 12}** The first paragraph of R.C. 5731.09(A) declares that the value of the gross estate "includes the value of an annuity or other payment receivable by a beneficiary * * * under any form of contract or agreement under which an annuity

or similar payment was payable to the decedent." This paragraph thus provides a general rule that the value of any annuity (or similar payment), regardless of how it was funded or purchased, is *included* in the gross estate for tax purposes. This paragraph is consistent with the overriding principle expressed in R.C. 5731.03, which generally provides that the gross estate for tax purposes "shall include the value *of all property*, to the extent of the interest therein of the decedent on the date of the decedent's death." (Emphasis added.)

{¶ 13} While the first paragraph of R.C. 5731.09(A) is a taxing provision describing the property included in valuing the gross estate, the second paragraph unmistakably *excludes* certain property from a calculation of the gross estate's value. The second paragraph of R.C. 5731.09(A) explains that the value of the gross estate does not include the part of the value of an annuity (or other similar payment) "as is proportionate to the part of the purchase price * * * contributed by the employer or former employer of the decedent * * * if the contributions were made by reason of the decedent's employment." The second paragraph of R.C. 5731.09(A) thus exempts what the first paragraph would have otherwise included as part of the gross estate. See *In re Estate of White* (1986), 25 Ohio St.3d 355, 357, 25 OBR 407, 408, 496 N.E.2d 888, 889 (interpreting the first sentence of R.C. 5731.12 as a taxing provision and the second sentence as an exemption provision). We therefore conclude that the second paragraph of R.C. 5731.09(A) is a tax-exemption provision. Accordingly, we must resolve any doubt as to the meaning of R.C. 5731.09(A)'s second paragraph in favor of taxation and against the applicability of the exemption. See *id.*, 25 Ohio St.3d at 357-358, 25 OBR at 408, 496 N.E.2d at 889-890.

{¶ 14} Regardless of how we characterize the second paragraph of R.C. 5731.09(A), the estate argues that the disputed amount of Roberts's rollover IRA remains exempt from taxation. The estate contends that nothing in R.C. 5731.09(A) requires that funds remain in the same employee "trust or fund" to which the

employer originally contributed in order to retain their tax-exempt status. Rather, the estate argues that the *source* of the funds is the dispositive factor. And because the disputed amount of Roberts's IRA is directly traceable to the amount of Pioneer's contributions to Roberts's employee retirement account, the estate asserts that the funds retain their exempt status under R.C. 5731.09(A) despite the fact that Roberts transferred them from the employer-administered retirement fund to the rollover IRA. We disagree with the estate because the language of R.C. 5731.09(A) dictates a contrary result.

{¶ 15} The exclusion allowed by the second paragraph of R.C. 5731.09(A) applies only to the "part of the value of the annuity or other payment as is proportionate to the part of the purchase price of *the contract or agreement* contributed by the employer or former employer of the decedent * * * if the contributions were made by reason of the decedent's employment." (Emphasis added.) The funds that the estate seeks to exempt do not fit within this description. The only "contract or agreement" at issue in this case is the IRA contract or agreement that Roberts entered into as an individual customer of Edward D. Jones & Company. Pioneer was not a party to Roberts's IRA contract and contributed nothing to it by reason of Roberts's employment. The only "contract or agreement" to which Pioneer contributed funds within the meaning of R.C. 5731.09(A) was Roberts's employee retirement account, which no longer existed at the time of Roberts's death. While it is true that Roberts avoided paying federal *income* tax on funds that he withdrew from his employee retirement account by transferring them to a rollover IRA,[2] there is no statutory support for the estate's premise that the funds retained the same status for purposes of Ohio *estate* taxation. Because Roberts himself transferred the disputed funds to the rollover IRA, all contributions

---

2. *See*, *generally*, Sections 402 and 408, Title 26, U.S.Code.

to the IRA's "purchase price" were his alone, rendering the exemption in R.C. 5731.09(A) inapplicable to any part of the IRA's value.

{¶ 16} The estate contends that this reading of R.C. 5731.09(A)'s second paragraph is "unduly restrictive." It urges us to interpret the exemption broadly to apply to funds that are *traceable* to employer contributions, even if the decedent has transferred the funds to a rollover IRA as Roberts did in this case.

{¶ 17} In support of its interpretation, the estate first argues that nothing in the language of R.C. 5731.09(A)'s second paragraph clearly limits the exemption to funds that remain in the same trust or fund to which the employer originally contributed. But this argument turns the operative mode of analysis upside down. The second paragraph of R.C. 5731.09(A) is an exemption provision that must be strictly construed *against* the taxpayer. See *In re Estate of White*, 25 Ohio St.3d at 357, 25 OBR at 408, 496 N.E.2d at 889. Far from demonstrating an entitlement to the exemption described in R.C. 5731.09(A), the estate has, at best, established an ambiguity as to whether the phrase "contributed by the employer or former employer" as used in the statute also refers to funds *traceable* to contributions from the employer. We must construe this ambiguity against the estate and resolve any doubt against the applicability of the exemption.

{¶ 18} The estate also attempts to support its interpretation by emphasizing the phrase "or otherwise" in R.C. 5731.09(A). The second paragraph of R.C. 5731.09(A) exempts from estate taxation "the value of the annuity or other payment as is proportionate to the part of the purchase price of the contract or agreement contributed by the employer or former employer of the decedent, *whether to an employee's trust or fund* forming part of a pension, annuity, retirement, bonus, or profit-sharing plan *or otherwise*." (Emphasis added.) The estate argues that the phrase "or otherwise" makes the exemption applicable to funds that are not necessarily contained in an "employee's trust or fund" at the time of a decedent's death. Thus, the estate contends that the funds in Roberts's rollover IRA (to the

extent traceable to Pioneer contributions to his employee retirement account) are excluded when calculating the value of the gross estate. This argument is also without merit because it ignores other vital portions of R.C. 5731.09(A).

{¶ 19} Admittedly, the phrase "or otherwise" in R.C. 5731.09(A) implies that the tax exclusion could apply to funds residing in an account other than "an employee's trust or fund." But this possibility does not lead us to conclude that any part of Roberts's rollover IRA is excluded from the value of the gross estate. The first paragraph of R.C. 5731.09(A) includes in the gross estate "the value of an annuity or other payment receivable by a beneficiary by reason of surviving the decedent under any form of *contract or agreement*." (Emphasis added.) The statute repeats the phrase "contract or agreement" in the second paragraph of R.C. 5731.09(A), which excludes from the gross estate the value of an annuity (or similar payment) that is "proportionate to the part of the purchase price *of the contract or agreement* contributed by the employer or former employer of the decedent * * * if the contributions were made by reason of the decedent's employment." (Emphasis added.) The phrase "or otherwise" does not change the fact that any payment receivable by a beneficiary of Roberts results from a contract or agreement Roberts himself had with Edward D. Jones & Company and not from any contract or agreement involving Pioneer. Absent a "contract or agreement" to which the decedent's former employer directly contributed, the exclusion in R.C. 5731.09(A) is inapplicable. " 'There is no authority under any rule of statutory construction to add to, enlarge, supply, expand, extend or improve the provisions of the statute to meet a situation not provided for.' " *Vought Industries*, 72 Ohio St.3d at 265, 648 N.E.2d at 1367, quoting *State ex rel. Foster v. Evatt* (1944), 144 Ohio St. 65, 29 O.O. 4, 56 N.E.2d 265, paragraph eight of the syllabus.

{¶ 20} For the foregoing reasons, we uphold the court of appeals' determination that the disputed portion of Roberts's IRA should be included when calculating the value of Roberts's gross estate. Under R.C. 5731.09(A), the value

of the gross estate includes the value of a rollover IRA that the decedent purchased and to which the decedent's employer or former employer did not directly contribute by reason of the decedent's employment. The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS and F.E. SWEENEY, JJ., concur.

RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 21}** I respectfully dissent from the majority's restrictive interpretation of R.C. 5731.09(A). I believe that funds in a qualified IRA that are directly attributed to the decedent's employer and were paid by reason of the decedent's employment should be excluded from the value of the decedent's gross estate.

**{¶ 22}** R.C. 5731.09(A) is intended to exclude from the value of the gross estate an employer's contribution or payment made toward an employee's retirement. I believe that the key component of the exclusion is the source of the funds, not their location upon death. The second paragraph of the statute, if read in its entirety and not in fragments as the majority does, supports this interpretation. It provides that the gross estate does not include the value of the fund that is proportionate to the part "of the purchase price of the contract or agreement contributed by the employer or former employer of the decedent, whether to an employee's trust or fund forming part of a pension, annuity, retirement, bonus, or profit-sharing plan *or otherwise*, if the contributions were made by reason of the decedent's employment." (Emphasis added.)

**{¶ 23}** The statute refers to "the purchase price of the contract or agreement" then provides qualifying examples. The majority contends that the only applicable contract is the IRA the decedent had with his brokerage company because that is where the funds are currently located and the decedent's Pioneer

account, into which the employer paid contributions, no longer exists. I do not agree with this narrow reading. The statute does not expressly require that the employer's contribution be confined to a "contract or agreement" that is established or maintained by the employer. The statute enumerates certain applicable funds but also provides for an alternative by including the words "or otherwise." The majority's construction of the statute renders useless these words if "contract or agreement" must be one of the employer-established funds referred to in the statute.

{¶ 24} I believe that a qualified rollover IRA may fall within the provision for a contribution "otherwise" made. A qualified rollover IRA is established to hold funds from an employer qualified retirement account. In many cases, including this one, the retirement account is directly rolled over into the IRA and the beneficiary never has possession of the funds. The employer's contribution remains an identifiable source of the IRA funds.

{¶ 25} This is a taxing statute that the General Assembly has amended through the years. The statute initially excluded only public pensions from the value of the gross estate. 1967 Am.Sub.S.B. No. 326, 132 Ohio Laws, Part I, 1942. The General Assembly subsequently expanded this to include the armed services, police and firefighters, and later both public and private employer-funded retirement funds generally. 1970 H.B. No. 865, 133 Ohio Laws, Part III, 2706; 1975 Am.Sub.S.B. No. 145, 136 Ohio Laws, Part I, 396; 1976 Am.H.B. No. 1013, 136 Ohio Laws, Part II, 3467.

{¶ 26} I believe that the General Assembly has consistently focused on the source of the funds, not the name of the fund in which they exist at the time of death. If an employee is terminated and forced to withdraw or roll over a retirement fund, or the employee elects to move the funds out of an employer's stock plan that is decreasing in value, the employee should not be penalized for moving the retirement assets from the employer-created fund into another fund, so long as the

source of the funds is identified. I do not believe that the General Assembly intended to penalize such transfers.

**{¶ 27}** This decedent rolled his Pioneer retirement account directly into an IRA opened with Edward D. Jones & Company. This dispute concerns only the amount transferred that represents his employer's contributions and interest earned on those contributions. It is undisputed that the amount representing earnings and appreciation attributable to the decedent's contributions is fully taxable. In fact, the decedent withdrew the funds that he contributed and paid taxes on that amount. I believe that the mere transfer of funds from one account to another should not convert the employer's contributions into assets valued as part of the decedent's gross estate.

**{¶ 28}** I believe that a qualified rollover IRA falls within the contract or agreement referred to in R.C. 5731.09(A) under this catchall phrase. Consequently, I dissent. I would reverse the judgment of the court of appeals and reinstate the judgment of the probate court.

RESNICK and PFEIFER, JJ., concur in the foregoing dissenting opinion.

———————————

*McCulloch, Felger, Fite & Gutmann Co., L.P.A.*, and *William B. McNeil*, for appellant, estate of Robert Lawrence Roberts.

*Betty D. Montgomery*, Attorney General, and *Barbara L. Barber*, Assistant Attorney General, for appellee, Thomas M. Zaino, Tax Commissioner of Ohio.

———————————