OPINION
{¶ 1} This is an appeal from a judgment of the court of commonpleas affirming a decision of the City of Piqua Income Tax Boardof Review in an action brought pursuant to R.C. Chapter 2506.01,et seq., by Appellant, Hartzell Propeller, Inc. ("Hartzell").
 {¶ 2} Pursuant to R.C. 2506.04, the common pleas court wasrequired to affirm the Board's order unless the court found theorder deficient for one of the grounds set out in that section.Those are that the order is unconstitutional, illegal, arbitrary,capricious, unreasonable, or unsupported by a preponderance ofthe substantial, reliable, and probative evidence.
 {¶ 3} The common pleas court's review is on both questions of fact and questions of law. In contrast, our review of that court's decision is confined to issues of law. SMC, Inc. v.Laudi (1975), 44 Ohio App.2d 325.
{¶ 4} Hartzell designs and manufactures constant speedvariable pitch propellers for the aviation industry at Hartzell'sfacility in Piqua. Hartzell has customers of two types: (1)original equipment manufacturers and modifiers, and (2) repairand replacement facilities and companies that distribute tothem.
 {¶ 5} Article XVIII, Section 13, of the Ohio Constitution, apart of the Home Rule Amendment, provides that "[l]aws may bepassed to limit the power of municipalities to levy taxes . . ."R.C. 718.02(A) establishes alternative methods for determinationof income subject to taxation by municipalities. That sectionprovides that the profits of a business conducted within amunicipality are taxable, and that the net profits of a businessoperating both within and outside the municipality are taxable"in the same proportion as the average ratio of . . . (3) [g]rossreceipts . . . from sales made . . . in such municipalcorporation . . . to gross receipts . . . during the same periodfrom sales . . ., wherever made or performed." Paragraph (B)(3)of that section states that "sales made in a municipalcorporation includes:
 {¶ 6} "All sales of tangible personal property shipped from aplace within such municipal corporation to purchasers outsidesuch municipal corporation regardless of where title passes ifthe taxpayer is not, through its own employees, regularly engagedin the solicitation or promotion of sales at the place wheredelivery is made."
 {¶ 7} Section III B.2.b.1. of the Piqua ordinances states thatfor purposes of the calculations for which R.C. 718.02(A)(3)provides, "[t]he following sales shall be considered Piquasales:
 {¶ 8} ".04 All sales of tangible personal property shippedfrom an office, store, warehouse, factory or place of storagewithin the City of Piqua to purchasers outside the City of Piqua,if the taxpayer is not, through its own employees, regularlyengaged in the solicitation or promotion of sales at the place ofdelivery."
 {¶ 9} It appears that Hartzell paid the tax on its full netincome for the tax years 1997, 1998 and 1999. Subsequently, in2001, Hartzell sought a refund of the taxes it had paid for thoseyears in proportion to its non-Piqua sales. The Piqua Board ofTax Review disallowed the refund, citing a Piqua ordinance thatstates: "A taxpayer may not change the method of accounting orapportionment of net profits after the due date for the filing ofthe original return." Hartzell filed a notice of appeal of theBoard's decision in the court of common pleas.
 {¶ 10} The trial court did not confine its review to thegrounds on which the Board had denied Hartzell's request.Instead, the court granted Hartzell's R.C. 2506.03 motion to takeadditional evidence, and then heard evidence that Hartzelloffered to show that the net profit from all of its sales tooriginal equipment manufacturers and to distributors for theyears 1997, 1998 and 1999 were exempt under the test set out inSection III B.2.b.1.04 of the Piqua ordinances. The trial courtthereafter affirmed the Board's decision. Hartzell filed a timelynotice of appeal to this court.
 {¶ 11} Hartzell presents four assignments of error on appeal.In various ways they attack the rationale that the trial courtapplied, arguing that the court erred (1) when it required adirect nexus between a particular sale and a correspondingpromotion or solicitation activity by Hartzell's employees, and(2) because the evidence Hartzell offered was neverthelesssufficient to prove the more general nexus which the Piquaordinance requires.
 {¶ 12} Both R.C. 718.02(A) and (B) and the Piqua ordinance define an exemption from the tax Piqua levies. In construing those terms, they must be strictly applied against the exemptions, and the taxpayer must show his entitlement to it. Inre Estate of Roberts (2002), 94 Ohio St.3d 311.
{¶ 13} It is undisputed that all the sales in issue were madeto purchasers outside Piqua and that the products Hartzell soldwere delivered to purchasers at places outside Piqua. The onlyreal issue was whether Hartzell had "regularly engaged in thesolicitation or promotion of sales at the place of delivery"during the tax years in question.
 {¶ 14} Mike Disbrow, Hartzell's Senior Vice President formarketing, applications, and customer support, testified thatHartzell is the largest manufacturer of variable speed propellersof its type in the world. He also testified that Hartzell has apolicy of visiting its original equipment manufacturer customersat least annually to solicit and promote sales. Evidencepresented to the Board demonstrates that in the twenty-one monthperiod between January 1, 2000 and October 1, 2001, over onehundred such calls were made. During the same period, forty-sixsuch calls were made by Hartzell's employees on distributorcustomers. Disbrow testified that this pattern of visits was alsotypical of the same activities for the tax years in question;1997, 1998, and 1999.
 {¶ 15} The City of Piqua did not dispute these contentions.Rather, it argued that Hartzell's evidence was insufficient toshow that it "regularly engaged" in sales and promotion calls, asthe ordinance requires. The City also relied on a letter datedJune 19, 2001, to Piqua's Director of Finance from Hartzell'sController, Daniel O'Connell, in which he stated: "With respectto Distributors, we do not do any solicitation of sales from thiscustomer class."
 {¶ 16} The trial court rejected the showing that Hartzellmade, stating: "I can't imagine a business going to an I.R.S.audit and offering such sweeping characterizations and suchtenuous documentation." That statement appears to apply to theissue of regularity. Concerning the further "place of delivery"requirement of the Piqua ordinance, the court stated:
 {¶ 17} "Even if Hartzell is right in its interpretation itcannot prevail here for lack of substantiation. For example,Hartzell says that the solicitation or promotion of sales arealways made at the place of delivery. Yet it offers noparticulars or detailed information to assure the Board or theCourt that the place where the salesperson calls on a corporateoffice in Dallas does not mean the propellers are delivered atthat particular place. Probably, the delivery of the item issometimes made to that place and sometimes not. The Court has notbeen sufficiently persuaded by Hartzell on this issue. From this,the Court understands the reluctance of the Board to allow theexemption and grant the tax refund." (Decision and Order, p. 3).
 {¶ 18} Hartzell does not challenge the court's findingsconcerning the "place of delivery" requirement. Hartzell'sgeneral contention is that the court demanded too particular anexus between its employee's activities and a given sale, andthat its burden is satisfied by evidence that it offered showingthat its employees "regularly engaged in solicitation orpromotion at the place of delivery (i.e., its customer's place ofbusiness.)" (Brief, p. 6).
 {¶ 19} We are persuaded that regular solicitation andpromotion is shown by the evidence Hartzell offered. And, weagree that no other nexus between those activities and anyparticular sale need be shown; more specifically, that aparticular call produced a particular sale. However, both thePiqua ordinance and R.C. 718.02(B)(3) require a further showingthat the product or merchandise sold was delivered to the placewhere those activities occurred. That is not merely to a locationwhere the customer does business, as Hartzell suggests, but tothe locus of its employee's sales and promotional activities onHartzell's behalf. The record does not show that connection.
 {¶ 20} The trial court identified a weakness in both the Piquaordinance and the statute. Both assume that deliveries occurwhere the seller's sales and promotional activity also tookplace. However, for customers that do business in multiplelocations, that may not apply. A firm can have engineeringfacilities at one place, purchasing facilities at another, andmanufacturing facilities in a third, all separated by hundreds ofmiles. A product may be delivered to the manufacturing facilitywhen sales and promotion activities that resulted in the deliveryoccurred at one or both of the other two. Then, the exemption isnot satisfied, no matter how regularly the sales and promotionactivities occurred.
 {¶ 21} Reasonably, the test should be whether the solicitationand/or promotion took place at the customer's place of business.We might so construe the exception, in which event the evidenceof sales calls on customers that Hartzell offered might besufficient. However, the Home Rule Amendment specifically confersthe power to limit a municipality's tax authority on the GeneralAssembly, which has adopted a "place of delivery" test in R.C.718.02(B)(3). The General Assembly should consider amending R.C.718.02(B)(3) to delete the place of delivery test in favor of a"purchaser's place of business" or similar test. Until then,local ordinances such as Piqua's can require more specific proofthat the delivery requirement was satisfied than Hartzelloffered.
 {¶ 22} Hartzell's assignments of error are overruled. Thejudgment of the trial court will be affirmed.
 Judgment affirmed.
 Brogan and Young, JJ., concur.